CASE NO. 16-CV-00252-GKF-TLW

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

RHODA McHENRY

Plaintiff,

vs.

COXCOM, LLC, d/b/a COX COMMUNICATIONS TULSA,

Defendant.

DEFENDANT COXCOM, LLC'S
MOTION FOR SUMMARY JUDGMENT
AGAINST PLAINTIFF, RHODA McHENRY,
AND BRIEF IN SUPPORT

February 13, 2017

/s/William W. O'Connor
William W. O'Connor, OBA No. 13200
Keith A. Wilkes, OBA No. 16750
Jacob S. Crawford, OBA No. 31031
NEWTON, O'CONNOR, TURNER & KETCHUM, P.C.
2700 Bank of America Center
15 W. 6th Street
Tulsa, Oklahoma  74119
(918) 587-0101
(918) 587-0102 (facsimile)
boconnor@newtonoconnor.com
jcrawford@newtonoconnor.com
kwilkes@newtonoconnor.com

-and-
William D. Deveney, *pro hac vice*
ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303
(404) 659-6700 – Telephone
(404) 222-9718 – Facsimile
deveney@elarbeethompson.com

ATTORNEYS FOR DEFENDANT,
COXCOM, LLC, d/b/a COX COMMUNICATIONS TULSA

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

INDEX OF AUTHORITIES............................................................................................ iii

INTRODUCTION ..............................................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ...........................................2

    Plaintiff's Employment History.......................................................................2

    Cox's Transition to Retail Solutions Stores..................................................3

    Plaintiff's Application for the Riverside Store Manager Position ......................5

    Termination of Plaintiff's Employment.......................................................8

    The Filing of Plaintiff's EEOC Charge and Civil Action...............................11

ARGUMENTS AND AUTHORITY............................................................................13

    Standard of Review........................................................................................13

    I.      PROPOSITION I ....................................................................14

            PLAINTIFF CANNOT ESTABLISH A CLAIM OF RACIALLY DISCRIMINATORY DENIAL OF PROMOTION ............................................................................14

                A. Plaintiff's 2009 Promotion Claim Is Time Barred Under the Title VII and 42 U.S.C. § 1981, and Her 2014 Promotion Claim and SSOS Claim is Time Barred Under Title VII ................................................14

                B. Plaintiff Cannot Show Racial Discrimination in the Riverside Store Manager Hiring Process ...................................................................15

                    1) The Initial Burden .................................................................15

                    2) Cox Has Articulated a Legitimate, Nondiscriminatory Reason16

                    3) Plaintiff Cannot Show Pretext .................................................16

    II.      PROPOSITION II...................................................................18

PLAINTIFF CANNOT ESTABLISH A CLAIM OF RACIALLY DISCRIMINATORY DISCHARGE ........................................................................................................18

    A. The *McDonnell Douglas Analytical Framework*s ............................18

      1)  The Initial Burden .................................................................18

      2)  Cox Has Articulated a Legitimate, Nondiscriminatory Reason20

      3)  Plaintiff Cannot Establish Pretext ............................................20

III.    PROPOSITION III...................................................................................22

PLAINTIFF CANNOT ESTABLISH A CLAIM OF RACE DISCRIMINATION REGARDING NOT BEING SLOTTED AS A SSOS ........................................................................22

    A. Plaintiff's SSOS Claim is Time Barred Under Title VII .................22
    B. Plaintiff Cannot Show Evidence of Race Discrimination.................22

IV.    PROPOSITION IV ..................................................................................23

PLAINTIFF CANNOT ESTABLISH A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .................................................................................23

CONCLUSION..........................................................................................................24

CERTIFICATE OF SERVICE ................................................................................26

# INDEX OF AUTHORITIES

## TABLE OF CASES

*Adler v. Wal-Mart Stores,*
144 F.3d 664 (10th Cir. 1998) ............................................................. 13

*Agrawal v. Farmers, Ins. Co.,*
2012 U.S. Dist. LEXIS 4789 (N.D. Okla. Jan. 717 2012) ................... 13

*Barlow v. C.R. Engalnd, Inc.,*
703 F.3d 497 ........................................................................................ 15

*Battle v. J-M Mfg. Co.,*
2011 WL 43066 (N.D. Okla. Jan. 5, 2011) ......................................... 23

*Branson v. Price River Coal Co.,*
863 F.2d 768 (10th Cir. 1988) ............................................................. 21

*Campbell v. Gambro Healthcare, Inc.,*
478 F.3d 1282 (10th Cir. 2007) ..................................................... 16, 20

*Carney v. City and Cty. Of Denver,*
534 F.3d 1269 (10th Cir. 2008) ........................................................... 15

*Conaway v. Smith,*
853 F.2d 789 (10th Cir. 1988) ............................................................. 13

*Daemi v. Church's Fried Chicken,*
931 F. 2d 1379 (10th Cir. 1991) .......................................................... 23

*DeWitt v. Southwestern Bell Tel. Co.,*
845 F.3d 1299 (10th Cir. 2017) ..................................................... 14, 24

*Drury v. BNSF Ry. Co.,*
657 F. App'x 785 (10th Cir. 2016) ................................................ 18, 19

*Durham v. Xerox Corp.,*
18 F.3d 836 (10 Cir. 1994) .................................................................. 17

*Eddy v. Brown,*
715 P. 2d 74 (Okla. 1986) .................................................................... 23

*EEOC v. Goodwill Indus. of Southwest Okla. & N. Tex.,*
2013 U.S. Dist. LEXIS 140137 (W.D. Okla. 2013) ............................ 14

## INDEX OF AUTHORITIES
### (Continued)

*Johnson v. Weld Cnty., Colorado,*
    594 F.3d 1202 (10th Cir. 2010) .......................................................................... 14

*Kendrick v. Penske Transp. Servs.,*
    220 F. 3d 1220 (10th Cir. 2000) ......................................................................... 21

*Lewis v. Tripp,*
    604 F.3d 1221 (10th Cir. 2010) .......................................................................... 14

*Martinez v. Unarco Indus., LLC,*
    2016 WL 1181685 (E.D. Okla. Mar. 25, 2016) ................................................ 21

*Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ............................................................................................ 13

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ...................................................................................... 15, 18

*McGowan v. Cit of Eufala,*
    472 F. 3d 736 (10th Cir. 2006) ........................................................................... 21

*Morgan v. Hilti, Inc.*,
    108 F.3d 1319 (10th Cir. 1997) ..................................................................... 16, 20

*Paris v. Southwestern Bell Tel. Co.,*
    F. App'x 810 (10th Cir. 2014 ............................................................................. 16

*Puckett v. Spirit Aerosystems, Inc.,*
    2014 WL 1944889 (N.D. Okla. May 9, 2013) .................................................. 23

*Richmond v. ONEOK, Inc.,*
    120 F.3d 205 (10th Cir. 1997) ..................................................................... 17, 20

*Salguero v. City of Clovis,*
    366 F. 3d 1168 (10th Cir. 2004) ................................................................... 18, 19

*Selenke v. Medical Imaging of Colorado,*
    248 F.3d 1249 (10th Cir. 2001) .......................................................................... 16

*Setliff v. Mem'l Hosp. of Sheridan Cnty,*
    850 F.2d 1384 (10th Cir. 1988) .......................................................................... 14

## INDEX OF AUTHORITIES
### (Continued)

*Tademy v. Union Pac. Corp.,*
    520 F.3d 1149 (10th Cir. 2008) ................................................................................. 15

*Tex. Dep't of Cmty. Affairs v. Burdine,*
    450 U.S. 248 (1981) .................................................................................................. 16

*Young v. Dillon Cos., Inc.,*
    468 F.3d 1243 (10th Cir. 2006) ............................................................................... 24

*Zaren v. Diamond Broadcasting, Inc.,*
    203 F. 3d 714 (10th Cir. 2000) ............................................................................... 23

### Statutes and Rules

42 U.S.C. § 1981 .................................................................................................. 1, 14, 15

42 U.S.C. § 2000e................................................................................................ 1, 15, 22

Fed. R. Civ. P. 56................................................................................................... 1, 13

N.D. LCvR 56.1(b) ....................................................................................................... 2

## BRIEF IN SUPPORT

Pursuant to FED. R. CIV. P. 56 and LCvR 56.1, Defendant CoxCom, LLC d/b/a Cox Communications Tulsa ("Cox" or the "Company") hereby moves the Court for judgment as a matter of law against Plaintiff Rhoda McHenry on the grounds that she cannot prove the essential elements of her claims against Cox.

## INTRODUCTION

Plaintiff filed this action against her former employer, Cox, asserting claims under Title VII of the Civil Rights Act of 1964,  42 U.S.C. § 2000e *et seq.* ("Title VII"), and/or 42 U.S.C. § 1981.  She claims that Cox discriminated against her because of her race by (1) slotting her as a Solutions Specialist Senior instead of a Senior Solutions & Operations Specialist ("SSOS"); (2) denying her promotion to Store Manager; and, (3) terminating her employment.  Plaintiff also claims these alleged acts constitute intentional infliction of emotional distress under Oklahoma law.  The evidence, however, incontrovertibly demonstrates that Cox never treated Plaintiff differently because of her race and did not commit any tortious conduct.

As discussed more fully below, Plaintiff was last employed by Cox as a Solutions Specialist Senior at the Company's Riverside Retail Solutions Store in Tulsa, Oklahoma.  Whether a Retail Solutions Store was staffed with an SSOS or a Solutions Specialist Senior depended on the particular store's sales volume and approved headcount, and not on the abilities of its individual employees.  Moreover, such decisions were not within the authority of the local markets; instead, those decisions were made on a nationwide basis by Cox's Channel Management Team in Atlanta, Georgia.

In or about March 2014, Plaintiff applied for the position of Riverside Store Manager.  However, an African-American recruiter who conducted a telephone interview with Plaintiff, recommended that she (Plaintiff) not be moved forward in the selection process because Plaintiff

was not as qualified as other candidates.  And her employment was terminated effective June 17, 2015, again, for non-discriminatory reasons; namely, because she left the Riverside store safe open with a full cash drawer for more than two-and-a-half hours.

As shown below, none of Plaintiff's claims find support in evidence or law, and, thus, judgment should be entered in Cox's favor on each of her claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to N.D. LCvR 56.1(b), and for purposes of this motion only, Cox submits the following concise statement of undisputed material facts, which establish that no genuine issue exists to support Plaintiff's claims and shows that Cox is entitled to judgment as a matter of law.

**Plaintiff's Employment History.**

1.      Plaintiff became employed by Cox in April 2000 as a Customer Care Representative I.  See Exhibit 1, Deposition of Plaintiff,[1] p. 30, ll. 8-14.

2.      Plaintiff voluntarily resigned her employment in August 2006.  See Exhibit 1, Deposition of Plaintiff, p. 34, ll. 2-5; p. 39, ll. 4-25; p. 40, l. 1; Ex. 10.

3.      Cox rehired Plaintiff in her former position as a Customer Care Representative I–Retail in August 2007, and thereafter promoted her to Customer Care Representative II–Retail in April 2008 and to Customer Care Representative III–Retail in November 2009.  See Exhibit 1, Deposition of Plaintiff, p. 40, ll. 2-5, 8-10; p. 41, ll. 5-7; p. 44, ll. 23-25; p. 45, ll. 1-25; p. 46, ll. l-2; Exs. 11, 12, 13, 14.

---

[1] "Exhibit 1, Deposition of Plaintiff," refers to the sworn deposition testimony of Plaintiff Rhoda McHenry, taken on January 18, 2017.  The abbreviation "Ex." or "Exs.", as used in the record citation, refers to the exhibit(s) in the cited to deposition.

4.      In or about September 2009, Plaintiff applied for a Supervisor Retail Service position, but was rejected for the position.  See Exhibit 1, Deposition of Plaintiff, p. 60, ll. 18-25; p. 61, ll. 1-25; p. 62, ll. 1-4; p. 63, ll. 17-63; Ex. 18.

**Cox's Transition to Retail Solutions Stores.**

5.      Before July 2010, Cox's Customer Care function focused principally on the administrative processing of customer payments while also addressing customer service inquiries, including some sales.  See Exhibit 1, Deposition of Plaintiff, p. 31, ll. 13-22.

6.      On July 10, 2010, Plaintiff's position was changed to a Solutions Specialist Senior in connection with market changes and Cox's adoption of a more retail-oriented approach to the sale of its products.  See Exhibit 1, Deposition of Plaintiff, p. 48, ll. 13-25; p. 49, ll. 1-19.

7.      Cox's Retail Solutions Stores typically were staffed with a Store Manager; a Senior Sales & Operations Specialist ("SSOS") and/or a Solutions Specialist Senior; and a number of Solutions Specialists, some of whom were part-time employees.  See Exhibit 2, Affidavit of Melissa Cruts, ¶ 2.

8.      As a Solutions Specialist Senior, Plaintiff's responsibilities were to assist customers, accept payments, and meet her individual sales quota.  See Exhibit 1, Deposition of Plaintiff, p. 113, ll. 3-13, 20-25; p. 114, l. 1; Ex. 32; Exhibit 2, Affidavit of Melissa Cruts, ¶ 3.

9.      As a Solutions Specialist Senior, Plaintiff also would perform some leadership duties, including scheduling breaks for Solutions Specialists, coaching Solutions Specialists on proper sales floor behaviors, and handling escalated customer issues.  See Exhibit 1, Deposition of Plaintiff, p. 53, ll. 2-13; Ex. 32; Exhibit 2, Affidavit of Melissa Cruts, ¶ 4.

10.     Because a large percentage of the time in the Solutions Specialist Senior position was devoted to *individual* sales, that position was compensated (and performance reviewed)

based on the achievement of individual sales goals.  See Exhibit 1, Deposition of Plaintiff, p. 55 ll. 24-25; p. 56, ll. 1-25; p. 57, ll. 1-25; p. 58, ll. 1-25; p. 59, ll. 1-25; p. 60, ll. 1-11; 113, ll. 3-23; Exs. 17, 32; Exhibit 2, Affidavit of Melissa Cruts, ¶ 6.

11.     In comparison, because a large percentage of an SSOS's time was devoted to improving overall *store* sales, the position was compensated (and performance reviewed) based on the achievement of store sales.  See Exhibit 1, Deposition of Plaintiff, p. 113, ll. 14-19; p. 114, ll. 2-6; Ex. 33; Exhibit 2, Affidavit of Melissa Cruts, ¶ 6.

12.     At all times relevant hereto, Cox had three Retail Solutions Stores in the Tulsa market: 51st Street; Riverside; and Woodland.  See Exhibit 1, Deposition of Plaintiff, p. 48, ll. 9-12; p. 53, ll. 20-25; Exhibit 2, Affidavit of Melissa Cruts, ¶ 7.

13.     The 51st Street store employed, on average, twice as many employees as either the Riverside or Woodland stores.  See Exhibit 1, Deposition of Plaintiff, p. 127, ll. 2-25; p. 128, ll. 1-25; p. 129, ll. 1-21; Ex. 34; Exhibit 2, Affidavit of Melissa Cruts, ¶ 8.

14.     Both the Riverside and Woodland stores were smaller than the 51st Street store, each typically employing a total of approximately 6 employees, including the Store Manager. See Exhibit 1, Deposition of Plaintiff, p. 115, ll. 1-25; p. 116, ll. 1-14; p. 124, ll. 11-25; p. 125, ll. 1-25; p. 126, ll. 1-25; p. 127, l. 1; Ex. 34; Exhibit 2. Affidavit of Melissa Cruts, ¶ 9.

15.     The Riverside store was staffed with two Solutions Specialist Seniors: Plaintiff and Patrick Blair (Caucasian)—from approximately January 2012 until January 2014, when Blair transferred to Manager of the Woodland store.  See Exhibit 1, Deposition of Plaintiff, p.  115, ll. 1-23; Ex. 34; Exhibit 3, Deposition of Patrick Blair, p. 15, ll. 21-22; p. 17, ll. 22-25; p. 18, ll. 3-14; p. 20, ll. 9-15.

**Plaintiff's Application for The Riverside Store Manager Position.**

16.     In approximately March 2014, Plaintiff applied for the Riverside Store Manager position.  See Exhibit 1, Deposition of Plaintiff, p. 74, ll. 15-25; p. 75, ll. 1-11; p. 114, ll. 18-20.

17.     On or about March 14, 2014, Shaune Thomas (African-American), a Talent Acquisition Consultant with Cox in Virginia, sent Plaintiff an email notice of a telephone interview for the Riverside Store Manager position to be conducted at 11:00 a.m. (Eastern time) on March 18, 2014.  See Exhibit 1, Deposition of Plaintiff, p. 72, ll. 20-25; p. 73, ll. 1-25; p. 74, ll. 1-10; p. 75, ll. 12-25; p. 76, ll. 1-20; Ex. 22, COX 0604-0605; Exhibit 4, Declaration of Shaune Thomas ("Thomas Decl."), ¶ 2, Ex. A, COX 0604-0605.

18.     Plaintiff failed to contact Thomas at the agreed-upon time for the telephone interview on March 18, 2014, but the interview went forward at some time thereafter.  See Exhibit 1, Deposition of Plaintiff, p. 76, ll. 21-25; p. 77, ll. 1-2; p. 82, ll. 2-9; p. 82, ll. 23-25; p. 83, ll. 1-25; p. 84, ll. 1-16; Ex. 22, COX0603-0604; Exhibit 4, Thomas Decl., ¶ 2, Ex. A, COX0603-0604.

19.     On April 2, 2014, Thomas informed Plaintiff that she (Plaintiff) had not been chosen to move forward in the selection process.  See Exhibit 1, Deposition of Plaintiff, p. 78, ll. 10-21; p. 79, ll. 1-25; p. 80, ll. 1-25, p. 81, ll. 1-9, 15-23; Exs. 23, 24, PLAINTIFF000020-000021;  Exhibit 4, Thomas Decl., ¶¶ 3, 4, Ex. B.

20.     Later on April 2, 2014, Plaintiff sent an email to Chris Wells (Caucasian), who was then the Tulsa Market Manager, and his director, Shohreh Aftahi (Iranian), who was then the Director of Sales for Oklahoma, stating that she (Plaintiff) had "a major concern regarding the position."  See Exhibit 1, Deposition of Plaintiff, p. 79, ll. 1-25; p. 80, ll. 1-25; p. 81, ll. 1-25; p. 82, l. 1; p. 84, ll. 1-3, Ex. 24, PLAINTIFF000020-000021.

5

21.     In her email, Plaintiff stated that she "would like to know why [she] was not giving [*sic*] the opportunity to at least have an interview," and that "[she felt] at this time that [she was] being discriminated against."  See Exhibit 1, Deposition of Plaintiff, p. 79, ll. 1-4; Ex. 24, PLAINTIFF000020-000021.

22.     On April 2, 2014, Erin Vierthaler, who was employed in Cox's Human Resources Department, and whom Plaintiff had copied on her email to Aftahi and Wells, sent an email responding to Plaintiff, thanking her "for reaching out to get additional information and feedback."  See Exhibit 1, Deposition of Plaintiff, p. 91, ll. 23-25; p. 92, ll. 1-11; Ex. 24, PLAINTIFF000020.

23.     Still later that same day, April 2, 2014, Wells sent an email to Thomas asking whether she (Thomas) had given Plaintiff any feedback regarding her application. See Exhibit 4, Thomas Decl., ¶ 5, Ex. C, COX0463

24.     The following day, April 3, 2014, Thomas emailed a detailed response to Aftahi and Wells, which included the following:

> I gave [Plaintiff] verbal feedback that she was not selected for panel interview based on her phone interview with me and based on the debrief I had with you.
>
> ….
>
> A few hours [after speaking with Plaintiff] I received a call from two HR Business Partners (Erin and Melissa) inquiring why the decision was made to not move her forward.  I provided them with specific feedback regarding her interview.  I explained that the decision to not move her forward was based on how she "compared" to the other candidates who applied.  As a stand alone interview, she did ok, but other applicants came across as more qualified.
>
> One point of clarity that she may need to understand, is that she did, indeed have an interview.  It is unfortunate that she feels that speaking with me, for 25 minutes, regarding her skills and background for [*sic*] was not considered an interview.

See Exhibit 4, Thomas Decl., ¶ 5; Ex. C, COX0463; Exhibit 5, Declaration of Shohreh Aftahi ("Aftahi Decl."), ¶ 10, Ex. A, COX 0463.

25.     On April 10 or 11, 2014, Aftahi and Wells met with Plaintiff to discuss her email regarding the Riverside Store Manager position, as well as Plaintiff's concerns about being slotted as a Solutions Specialist Senior rather than an SSOS.  See Exhibit 1, Deposition of Plaintiff, p. 96, ll. 24-25; p. 97, ll. 1-11; Ex. 25; Exhibit 5, Aftahi Decl., ¶ 11, Ex. B.

26.     Aftahi prepared a summary of the meeting with Plaintiff, which Plaintiff testified was accurate.  See Exhibit 1, Deposition of Plaintiff, p. 93, ll. 16-25; p. 94, ll. 1-12, Ex. 25; Exhibit 5, Aftahi Decl., ¶ 11, Ex. B.

27.     Aftahi and Wells explained to Plaintiff that she (Plaintiff) had gone through the same telephone interview process as all of the other applicants for the Riverside Store Manager position.  See Exhibit 5, Aftahi Decl., ¶ 11, Ex. B; see also Exhibit 1, Deposition of Plaintiff, p. 93, ll. 16-25; p. 94, ll. 1-12, Ex. 25.

28.     With regard to the Solutions Specialist Senior position, Aftahi and Wells explained to Plaintiff that it was a "'center' driven" program – meaning that it was run by the Channel Management Team in Atlanta, Georgia – and was based on a store's sales volume and headcount, and not the abilities of individual employees.  See Exhibit 5, Aftahi Decl., ¶ 11, Ex. B; see also Exhibit 1, Deposition of Plaintiff, p. 93, ll. 16-25; p. 94, ll. 1-12; Ex. 25.

29.     Cox's local management was not authorized to change an employee's position to an SSOS.  Exhibit 5, Aftahi Decl., ¶ 12; see also Exhibit 6, Affidavit of Christine Andersen ("Andersen Aff."), ¶ 7; Exhibit 8, Declaration of Hisham Odeh ("Odeh Decl."), ¶ 7.

30.     Although similar in physical size to the Riverside store, the Woodland store was the only store in the Tulsa market that was open on Sundays and was open longer hours during

7

the other days of the week because it was required by the management of the Woodland Hills mall; thus, the Woodland store was given additional headcount and was staffed with an SSOS. See Exhibit 5, Aftahi Decl., ¶ 7.

31.     Nicholas Stoll (Caucasian) was selected for the Riverside Store Manager position and served in that capacity through at least the remainder of 2014.  See Exhibit 1, Deposition of Plaintiff, p. 49, ll. 20-23; p. 56, ll. 7-19; p. 86, ll. 22-25; Ex. 17.

32.     Plaintiff does not claim that Stoll was less qualified than her because she does not know his credentials.  See Exhibit 1, Deposition of Plaintiff, p. 87, ll. 1-10.

33.     Plaintiff did not have any issues with Stoll's management when they worked at the Riverside store.  See Exhibit 1, Deposition of Plaintiff, p. 60, ll. 12-14.

**Termination of Plaintiff's Employment.**

34.     On or about December 19, 2013, Plaintiff signed a Payment Acceptance Policy Training form indicating her completion of two training modules on Cox's cash handling procedures.  See Exhibit 1, Deposition of Plaintiff, p. 104, ll. 3-12; pp. 105, ll. 9-25; p. 106, ll. 1-25; p. 107, ll. 1-19; Exs. 28, 29.

35.     On May 19, 2015, Patrick Blair, who was then the Riverside Store Manager, sent an email to Plaintiff counseling her for leaving her cash drawer unlocked overnight, as well as the cash drawer of one of the store's Solutions Specialists for whom Plaintiff was responsible, in violation of Cox's cash handling procedures.  See Exhibit 1, Deposition of Plaintiff, p. 100, ll. 9-25; p. 101, ll. 1-25; p. 102, ll. 1-20; Ex. 27; Exhibit 3, Deposition of Patrick Blair, p. 23, ll. 20-25; p. 24, ll. 1-16; p. 25, ll. 10-23; p. 49, ll. 8-25; p. 50, l. 1; p. 72, ll. 18-25; p. 73, ll. 1-25; p. 74, ll. 1-10; Ex. 21.

36.     At approximately 9:40 a.m. on June 10, 2015, Plaintiff entered the Safe/Cash Counting Room of the Riverside store with a front-line employee, Alex Flores, and opened the safe.  See Exhibit 7, Affidavit of Kevin Hamilton ("Hamilton Aff."), ¶¶ 2, 3, Ex. A; Exhibit 3, Deposition of Patrick Blair, p. 51, ll. 10-12, 17-25; p. 52, ll. 1-2.

37.     At approximately 9:43 a.m., Plaintiff left Flores alone in the room with the safe open.  See Exhibit 7, Hamilton Aff., ¶ 2, Ex. A; Exhibit 3, Deposition of Patrick Blair, p. 55, ll. 1-4.

38.     Plaintiff returned to the room at approximately 9:44 a.m., when she and the employee exited the room together; however, Plaintiff left the store safe open with a full cash till unsecured, and the safe remained open and unsecured for almost three hours thereafter until it was discovered by Blair at approximately 12:18 p.m.  See Exhibit 1, Deposition of Plaintiff, p. 103, ll. 20-25; p. 104, ll. 1-2; Exhibit 7, Hamilton Aff., ¶ 2, 3, Ex. A; Exhibit 3, Deposition of Patrick Blair, p. 36, ll. 14-20; p. 38, ll. 5-9.

39.     On June 10, 2015, Plaintiff was not looking for new employment; nevertheless, at 3:45 p.m. on June 10, 2015, Plaintiff sent an email from her Cox work email to her home email forwarding a copy of her resume.  See Exhibit 1, Deposition of Plaintiff, p. 110, ll. 20-25; p. 111, ll. 1-25; p. 112, ll. 1-4; Ex. 31.

40.     Blair informed his Manager, Sham Odeh (Palestinian Arab), who was then the Tulsa Market Manager, that Plaintiff had left the store safe open on June 10, 2015.  See Exhibit 3, Deposition of Patrick Blair, p. 63, ll. 24-25; p. 64, ll. 1-11; Exhibit 8, Odeh Decl., ¶¶ 1, 2.

41.     Cox's Human Resources Business Partner, Melissa Cruts, reviewed security camera video of the incident with Odeh and Christine Andersen (Caucasian), the Director of

9

Retail Sales for Cox's Central Region.   See Exhibit 6, Affidavit of Christine Andersen ("Andersen Aff."), ¶¶ 1-3, Ex. A; Exhibit 8, Odeh Decl., ¶ 3, Ex. A.

42.     Oklahoma had been added to Andersen's Central Region on April 12, 2014, and Odeh did not become the Retail Market Manager until July 7, 2014.  See Exhibit 6, Andersen Aff., ¶ 1; Exhibit 8, Odeh Decl., ¶ 1.

43.     Cruts was assigned to Cox's sales side on May 24, 2014, when Vierthaler resigned her employment.  See Exhibit 2, Affidavit of Melissa Cruts, ¶ 1.

44.     Andersen, Odeh, and Cruts concluded that Plaintiff's failure to secure the safe (as well as leaving a front-line employee alone in the safe room with the safe open) constituted a gross neglect of her duties and job responsibilities, as well as disregard for Cox's security of company property rule.  See Exhibit 6, Andersen Aff., ¶ 4; Exhibit 8, Odeh Decl., ¶ 4,

45.     Cox maintains a Corrective Action Policy, which provides generally for a four-step process as follows: Step One – Documented Verbal Warning; Step Two – Documented Written Warning; Step Three – Final Written Warning; and Step Four – Dismissal.  See Exhibit 9, Deposition of Melissa Cruts, p. 115, ll. 17-25; p. 116, ll. 1-3; Ex. 25, COX0390; see also *id*. at p. 109, ll. 21-24; Ex. 24, COX0388.

46.     However, the Corrective Action Policy also expressly provides: "Because unsatisfactory job performance, unacceptable conduct and violation of policies, procedures, and practices have different levels of seriousness, corrective action may occur at any level of the corrective process.  At times it may be warranted to accelerate the level of corrective action required."  See Exhibit 9, Deposition Melissa Cruts, p. 115, ll. 17-25; p. 116, ll. 1-3; Ex. 25, COX0390; see also *id*. at p. 113, ll. 2-25; p. 114, ll. 1-15, Ex. 24, COX0388.

47.     The unrestricted examples of conduct specifically set forth in the policy that may be cause for immediate dismissal include, the "[r]eckless disregard for … any  safety or security rule where such disregard … endangers the safety of ... the property of the company" and other "[g]ross neglect of duties or job responsibilities."  See Exhibit 9, Deposition Melissa Cruts, p. 115, ll. 17-25; p. 116, ll. 1-3; Ex. 25, COX0392.

48.     On or about June 16, 2015, based on her consultation with Andersen and Odeh, Cruts prepared and distributed a Termination Report recommending that Plaintiff be discharged from Cox's employ.  See Exhibit 9, Deposition of Melissa Cruts, p. 89, ll. 1-25; p. 90, ll. 1-4; Ex. 17; Exhibit 6, Andersen Aff., ¶ 5, Ex. B; Exhibit 8, Odeh Decl., ¶ 5, Ex. B.

49.     Plaintiff's discharge was subsequently approved by Andersen and Odeh, as well as Oklahoma Human Resources Director Heather Romeike (Caucasian).   See Exhibit 9, Deposition of Melissa Cruts, p. 90, ll. 7-11; Exhibit 6, Andersen Aff., ¶ 5, Ex. C; Exhibit 8, Odeh Decl., ¶ 5, Ex. C.

50.     Plaintiff's employment was terminated effective June 17, 2015, for leaving the safe open in violation of Cox's cash handling procedures and policies.  See Exhibit 1, Deposition of Plaintiff, p. 28, ll. 10-12; p. 102, ll. 21-25; p. 103, ll. 1-14; Exhibit 9, Deposition of Melissa Cruts,  p. 89, ll. 4-25; p. 90, ll. 1-24; Exhibit 6, Andersen Aff., ¶ 5; Exhibit 8, Odeh Aff., ¶ 5, Exs. B, C.

**The Filing of Plaintiff's EEOC Charge and Civil Action.**

51.     Plaintiff, through her counsel of record, submitted a completed questionnaire to the U.S. Equal Employment Opportunity Commission (EEOC) on August 17, 2015, and filed a signed EEOC charge on September 21, 2015.  Exhibit  1, Deposition of Plaintiff, p. 10, ll. 7-25; p. 11, ll. 1-24, Exs. 1, 2, 3.

52.     Plaintiff filed this civil action on April 8, 2016.  See Exhibit 1, Deposition of Plaintiff, p. 71, ll. 5-25; p. 72, ll. 1-17.

53.     Plaintiff admits that during her entire employment with Cox, she never heard anybody make any racially derogatory remarks with the exception of a co-worker whom Plaintiff alleges made offensive references to Odeh as an Iranian – Odeh actually is a Palestinian Arab – more than once but less than five times.  See Exhibit 1, Deposition of Plaintiff, p. 129, ll. 22-25; p. 130, ll. 1-25; p. 131, ll. 1-12; see also id. at p. 132, ll. 9-15; Exhibit 8, Odeh Decl., ¶ 8.

54.     Plaintiff admits the only reason she contends she was discriminated against in the Riverside Store Manager hiring process was because she was the only African-American applicant, and was the only applicant who did not progress beyond the telephone interview stage. See Exhibit 1, Deposition of Plaintiff, p. 132, ll. 16-25; p. 133, l. 1; p. 135, ll. 12-16.

55.     Plaintiff claims her termination was race-based because (1) "[she] feel[s] like after the services that [were] provided and the money that [she] made for Cox, there shouldn't have been a reason for [her] getting denied for [her] unemployment"; and, (2) she alleges Blair had left the safe open some time in the past and was not terminated (which Blair denies).  In addition, Cruts, Odeh, and Anderson were not aware of any allegation that Blair had left a safe open.   See Exhibit 1, Deposition of Plaintiff, p. 133, ll. 2-25; p. 134, ll. 1-12; Exhibit 9, Deposition of Melissa Cruts, p. 98, ll. 18-22; Exhibit 3, Deposition of Patrick Blair, p. 44, ll. 5-9; Exhibit 6, Andersen Aff., ¶ 6; Exhibit 8, Odeh Decl., ¶ 6.

56.     Plaintiff also contends that, under Cox's Corrective Action Policy, she should have been able to leave the safe open four separate times before she was fired, regardless of whether any money was missing. *See* Exhibit 1, Deposition of Plaintiff, p. 134, ll. 13-25; p. 135, ll. 1-11.

57.     Plaintiff's allegation that she was not promoted to SSOS because of her race is based on the fact the 51st Street and Woodland stores each had an SSOS who was white.  See Exhibit 1, Deposition of Plaintiff, p. 135, ll. 17-25; p. 136, ll. 1-2; p. 138, ll. 1-11.

## ARGUMENTS AND AUTHORITY

### Standard of Review

"A motion for summary judgment shall be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Agrawal v. Farmers Ins. Co.*, No. 11-CV-087-GKF-TLW, 2012 U.S. Dist. LEXIS 4789, at *2 (N.D. Okla. Jan. 17, 2012) (quoting FED. R. CIV. P. 56(a)).  An issue is genuinely in dispute only if there is sufficient evidence on both sides so that a rational jury could resolve the issue in favor of either party.  *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998).  If the record evidence taken as a whole could not lead a rational jury to find for the non-movant, there is no genuine issue for trial.  *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  An issue of fact is material only if "it is essential to the proper disposition of the claim."  *Adler*, 144 F.3d at 670.

Once the movant meets its burden, the non-movant must set forth specific facts supported by admissible evidence from which a rational jury could find in its favor.  *Id.*  The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Co., Ltd.*, 475 U.S. at 587; it must present affirmative evidence that its "version of relevant facts is not fanciful," *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).  Regardless of which theory of pretext Plaintiff asserts, the Court's "'role isn't to ask whether the employer's decision was 'wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs.'"

13

*DeWitt v. Southwestern Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (quoting *Johnson v. Weld Cnty., Colorado*, 594 F.3d 1202, 1211 (10th Cir. 2010)).

A "mere scintilla of evidence" is insufficient to carry this burden. *EEOC v. Goodwill Indus. of Southwest Okla. & N. Tex.*, No. CIV–11–1043–D, 2013 U.S. Dist. LEXIS 140137, at *4 (W.D. Okla. Sept. 30, 2013). A plaintiff's assumptions and speculations are insufficient to survive a motion for summary judgment. *Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010) (stating that the Tenth Circuit has consistently emphasized that "'more than pure speculation' [and assumption] is required 'to defeat a motion for summary judgment.'" (quoting *Setliff v. Mem'l Hosp. of Sheridan Cnty.*, 850 F.2d 1384, 1393 (10th Cir. 1988)).

## PROPOSITION I

### PLAINTIFF CANNOT ESTABLISH A CLAIM OF RACIALLY-DISCRIMINATORY DENIAL OF PROMOTION

Plaintiff cannot establish a claim of racially-discriminatory denial of promotion because she has no evidence that Cox denied her any promotion, including promotion to the Riverside Store Manager in April 2014, because of her race. Any decision Cox made with regard to Plaintiff's promotional opportunities was a simple exercise of its legitimate, non-discriminatory business judgment.

**A.    Plaintiff's 2009 Promotion Claim Is Time Barred Under Title VII and 42 U.S.C. § 1981, and Her 2014 Promotion Claim Is Time Barred under Title VII.**

In her Petition (hereinafter, the "Complaint"), Plaintiff alleges – as "background evidence" – that she was discriminated against because of her race with regard to an earlier promotional process in 2009. [See Doc. 2-1, ¶ 14.] That allegation, which Cox unequivocally denies, is nonetheless time barred under both Title VII and 42 U.S.C. § 1981.

14

Plaintiff did not submit an intake questionnaire to the EEOC until August 17, 2015, more than five years after the alleged 2009 discriminatory promotion process, see Undisputed Material Fact No. 51; and long after Title VII's 300-day period for challenging the 2009 decision had expired, *see* 42 U.S.C. § 2000e-5(f)(1).  And Plaintiff did not file this action until April 2016, well beyond the four year statute of limitations under 42 U.S.C. § 1981.  *Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1170 (10th Cir. 2008).  As a matter of law, any claim arising out of the 2009 promotional process is time barred.

Plaintiff's claim regarding the 2014 promotional process is also time barred under Title VII.  Plaintiff was informed that she was not being moved forward in the 2014 promotional process on April 2, 2014, more than 300 days before submitting her EEOC intake questionnaire on August 17, 2015.  *See* Undisputed Material Fact Nos. 19, 51; 42 U.S.C. § 2000e-5(f)(1).

## B. Plaintiff Cannot Show Racial Discrimination In the Riverside Store Manager Hiring Process.

Plaintiff has no direct evidence of racial discrimination in the decision by Cox to not promote Plaintiff to the Riverside Store Manager position, and, thus, her discriminatory denial of promotion claim must be analyzed under the burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2]

### (1) The Initial Burden.

Under the *McDonnell Douglas* framework, Plaintiff must first establish a *prima facie* case of discrimination.  *Barlow v. C.R. England, Inc.,* 703 F.3d 497, 505 (10th Cir. 2008).  To establish a *prima facie* case of racially-discriminatory denial of promotion, Plaintiff "must demonstrate that: (1) she was a member of a protected class; (2) she applied for and was

---

[2] The Tenth Circuit analyzes race discrimination claims under 42 U.S.C. § 1981 in the same manner as such claims under Title VII.  *Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008).

qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled or remained available." *Paris v. Southwestern Bell Tel. Co.*, 94 F. App'x 810, 812 (10th Cir. 2014). Cox does not dispute that Plaintiff can state a prima facie case; however, as discussed below, Ms. Thomas, who conducted the telephone interview and is African-American, noted that while Plaintiff had done okay as a stand-alone interview, she came across as less qualified than the other applicants.

### (2)   Cox Has Articulated a Legitimate, Nondiscriminatory Reason.

Even if Plaintiff were able to make out a *prima facie* case, Cox's burden to state a legitimate, nondiscriminatory reason for not moving her forward in the selection process is not onerous; it is a burden of production, not persuasion. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Plaintiff was not moved forward in the selection process based on Thomas' recommendation that the other applicants were more qualified. See Undisputed Material Fact Nos. 17-24.

### (3)   Plaintiff Cannot Show Pretext.

Once Cox has stated a legitimate, nondiscriminatory reason for the challenged employment action, summary judgment is warranted unless Plaintiff can show evidence that Cox's reason was pretextual. *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1259-60 (10th Cir. 2001). Plaintiff cannot show that Cox's legitimate business decision to not move her forward in the selection process, based on Thomas' recommendation, was mere pretext.

Plaintiff must present admissible evidence showing "'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Cox's] proffered legitimate reasons for its action that a reasonable fact finder could rationally find them worthy of credence.'" *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d at 1282, 1290 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319,

16

1323 (10th Cir. 1997)).  At her deposition, Plaintiff did not claim Stoll was less qualified than her.  See Undisputed Material Fact No. 32.  In fact, Plaintiff testified that the only basis for contending that her rejection was race-based is because she was the only African-American applicant, and was the only applicant who did not move forward in the hiring process after the telephone interviews.  See Undisputed Material Fact No. 54.  This allegation, however, is fatally flawed.  Thomas, who is African-American and conducted the telephone interviews with each of the applicants, recommended that Plaintiff not be moved forward in the selection process because Thomas did not think Plaintiff was as qualified as the other candidates.[3]  See Undisputed Material Fact Nos. 17-24.

Further, Cox did "not violate section 1981 by choosing better or even equally qualified white candidates over a qualified black candidate unless it did so with discriminatory intent." *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994).  Plaintiff here has no evidence of such discriminatory intent and cannot proceed.  "Mere conjecture that [Cox's] reason is pretext … will not defeat a motion for summary judgment."  *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).  Summary judgment in favor of Cox on Plaintiff's claim of discriminatory denial of promotion is proper.

---

[3] Moreover, and contrary to the allegations in the Complaint [see Doc. 2-1, ¶ 17], Cox immediately acted upon Plaintiff's April 2, 2015, email in which she indicated that she was upset at allegedly not having been selected for an interview.  See Undisputed Material Fact Nos. 20-30. Wells promptly contacted Thomas, who provided a detailed response to him and Aftahi regarding Thomas' recommendation.  See Undisputed Material Fact Nos. 20-24.  Wells and Aftahi (who is Iranian) then met with Plaintiff on or about April 10 or 11 to address Plaintiff's concerns.  See Undisputed Material Fact No. 25.  Plaintiff testified that Aftahi's summary of their meeting was accurate.  See Undisputed Material Fact No. 26.

**PROPOSITION II**

**PLAINTIFF CANNOT ESTABLISH A CLAIM**
**OF RACIALLY-DISCRIMINATORY DISCHARGE**

A.      **The *McDonnell Douglas* Analytical Framework.**

      (1)      **The Initial Burden.**

"In the absence of direct evidence of racial discrimination, a plaintiff initially must prove a prima facie case of discrimination based on race by showing '(1) [she] was a member of a protected class; (2) [she] was qualified and satisfactorily performing [her] job; and (3) [she] was terminated under circumstances giving rise to an inference of discrimination.'" *Drury v. BNSF Ry. Co.*, 657 F. App'x 785, 789 (10th Cir. 2016) (quoting *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004)).   Plaintiff may establish the third element through admissible evidence of discriminatory actions or remarks by decision-makers, preferential treatment given to similarly-situated employees outside her protected class, and the sequence of events leading to her discharge.   *Id.*   Plaintiff cannot establish a prima facie case of race discrimination here because she has no evidence that she was discharged under circumstances giving rise to an inference of racial discrimination.

Cox does not dispute that Plaintiff was a member of a protected class.  On June 10, 2015, however, Plaintiff left the store safe open for almost three hours, at the beginning of which period she also left a front-line employee alone in the safe room with the safe open.   See Undisputed Material Fact Nos.  34-38.  The Tulsa Market Manager, Odeh, who is a Palestinian Arab, and Andersen, the Director of Retail Sales for the Central Region, reviewed the security video in consultation with Cruts, who was the Human Resources Business Partner supporting the sales organization at that time, and determined that Plaintiff's conduct was in reckless disregard of the Company's security rules and constituted a gross neglect of Plaintiff's duties and job

18

responsibilities, for which her employment should be terminated.  See Undisputed Material Fact Nos. 40-44.

In her Complaint, Plaintiff alleged that her employment was terminated "with no progressive discipline whatsoever," which she further alleged "was a violation of Cox disciplinary policy."  At her deposition, Plaintiff testified that Cox's Corrective Action Policy *required* a four-step process as follows: Step One – Documented Verbal Warning; Step Two – Documented Written Warning; Step Three – Final Written Warning; and Step Four – Dismissal. See Undisputed Material Fact Nos.  45, 56.  *Indeed*, Plaintiff testified at her deposition that she should not have been discharged under the policy unless and until she had left the safe open *four separate times* – regardless of whether money was missing from the safe.  See Undisputed Material Fact No. 56.

Plaintiff's contentions are contradicted by the policy itself, as well as common sense. Although the policy generally prescribes the four-step policy, it also expressly provides as follows: "Because unsatisfactory job performance, unacceptable conduct and violation of policies, procedures, and practices have different levels of seriousness, corrective action may occur at any level of the corrective process.  At times it may be warranted to accelerate the level of corrective action required."  See Undisputed Material Fact No. 46.  Among the unrestricted examples of conduct that may be cause for immediate dismissal specifically set forth in the policy are the "[r]eckless disregard for … any safety or security rule where such disregard … endangers the safety of ... the property of the company" and other "[g]ross neglect of duties or job responsibilities."  See Undisputed Material Fact No. 47.  In summary, Plaintiff cannot point to any evidence showing that "'[she] was terminated under circumstances giving rise to an inference of discrimination.'"  *Drury*, 657 F. App'x at 789 (quoting *Salguero*, 366 F.3d at 1175).

### (2)    Cox Has Articulated a Legitimate, Nondiscriminatory Reason.

Even if Plaintiff were able to make out a *prima facie* case, Cox's burden to state a legitimate, nondiscriminatory reason for her discharge is only a burden of production, not persuasion, and is not onerous.  *See Burdine*, 450 U..S at 254.  Plaintiff was terminated for leaving the Riverside store safe open on June 10, 2015, for more than two-and-a-half hours.  Undisputed Material Fact Nos. 34-50.

### (3)    Plaintiff Cannot Establish Pretext.

There is no evidence suggesting Cox's legitimate, nondiscriminatory reason for Plaintiff's discharge was a mere pretext for racial discrimination.  Again, "[m]ere conjecture that [Cox's] reason is pretext … will not defeat a motion for summary judgment." *Richmond*, 120 F.3d at 209.  Plaintiff must present admissible evidence showing "'such weaknesses, implausbilities, inconsistencies, incoherencies or contradictions in [Cox's] proffered legitimate reasons for its action that a reasonable fact finder could rationally find them worthy of credence.'" *Campbell*, 478 F.3d at 1290 (quoting *Morgan*, 108 F.3d at 1323).  On May 19, 2015, less than a month before Plaintiff left the same open on June 10, Blair had counseled Plaintiff for leaving her cash drawer unlocked overnight, as well as the cash drawer of one of the store's Solutions Specialists, for whom Plaintiff was responsible, in violation of Cox's cash handling procedures.  See Undisputed Material Fact No. 35.

Plaintiff testified that she was treated less favorably than Blair, who Plaintiff alleges had left the safe open on one occasion years earlier, when she and Blair were both Solution Specialists Senior reporting to an African-American store manager.  See Undisputed Material Fact Nos. 15, 55.[4]  Blair flatly denies the alleged earlier incident, but Plaintiff's allegation that

---

[4] Blair transferred to the Woodland store in January 2014.  See Undisputed Material Fact No. 15.

20

Blair purportedly was treated more favorably by an African-American store manager does not show race discrimination against Plaintiff more than at least a year later while working under a completely different upper management team.  See Undisputed Material Fact Nos. 15, 34-50.

Oklahoma was added to Andersen's Central Region on April 12, 2014, and Odeh did not become the Retail Market Manager for the Tulsa market until July 7, 2014.  See Undisputed Material Fact No. 42. Cruts was not assigned to the sales side until after Vierthaler resigned her employment in May 24, 2014.  See Undisputed Material Fact No. 43.  Moreover, none of those individuals were aware of any allegation that Blair had left the safe open.  See Undisputed Material Fact No. 55.

"Generally, to be similarly situated, employees must deal with the same supervisor." *Martinez v. Unarco Indus., LLC*, Case No. CIV-14-086-KEW, 2016 WL 1181685, at *6 (E.D. Okla. Mar. 25, 2016) (citing *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)). "'The basis for this requirement lies in the reasoning that '[d]ifferent supervisors will inevitably react differently' to employee misconduct." *Martinez*, 2016 WL 1181685, at *6 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1233 (10th Cir. 2000)).

Finally, Plaintiff testified at her deposition that, except for alleged remarks made by a co-worker *about* Odeh and his nationality, Palestinian Arab, Plaintiff never heard anyone at Cox make any racially derogatory remarks in the approximately 14 years she was employed there. See Undisputed Material Fact No. 53.  "Mere conjecture that [an] employer's explanation is a pretext for intentional discrimination is an insufficient basis for a denial of summary judgment." *Branson v. Price River Coal Co.*, 863 F.2d 768, 772 (10th Cir. 1988).  Plaintiff cannot show that her discharge was a pretext for race discrimination and, thus, Cox is entitled to judgment as a matter of law on Plaintiff's discriminatory discharge claim.

**PROPOSITION III**

**PLAINTIFF CANNOT ESTABLISH A CLAIM OF RACE DISCRIMINATION
REGARDING NOT BEING SLOTTED AS A SSOS**

Finally, Plaintiff cannot establish that she was discriminated against because of her race by being slotted as a Solutions Specialist Senior instead of an SSOS.

**A.     Plaintiff's SSOS Claim Is Time Barred Under Title VII.**

Plaintiff admittedly believed she should have been slotted as an SSOS as early as March 2014, and Aftahi and Wells explained to Plaintiff in early April 2014 why, *inter alia*, she was slotted as a Solutions Specialist Senior instead.  Undisputed Material Fact Nos. 28-30.   But Plaintiff did not submit an intake questionnaire to the EEOC until August 17, 2015, more than 300 days later.   As such, Plaintiff's Title VII claim that she was discriminatorily slotted as a Solutions Specialist Senior because of her race is untimely.  *See* 42 U.S.C. § 2000e-5(f)(1).

**B.     Plaintiff Cannot Show Evidence of Race Discrimination.**

Moreover, there is no evidence to support Plaintiff's claims that she was slotted as a Solutions Specialist Senior based on her race.  Plaintiff testified that the only reason she believes she was discriminated against because of her race regarding the SSOS slotting is because the SSOSs at the 51st Street and Woodland stores were both white.  Undisputed Material Fact No. 57.  But as Aftahi and Wells explained to Plaintiff during their meeting with Plaintiff in April 2014, that whether a Retail Solutions Store was staffed with an SSOS or a Solutions Specialist Senior was based on that store's sales volume and authorized headcount, and not on the abilities of its individual employees.  Undisputed Material Fact No. 28.  Moreover, Blair, who is white, also was a Solutions Specialist Senior while at the Riverside store.  Undisputed Material Fact No. 15.

22

Finally, Cox's local management was not authorized to change Plaintiff's position to an SSOS.  Undisputed Material Fact No. 29.  Decisions as to staffing in the Retail Solutions Stores were made by the Channel Management Team in Atlanta, Georgia.  Undisputed Material Fact Nos. 28-29.  Accordingly, Plaintiff has no evidence that she was slotted as a Solutions Specialist Senior because of her race.

**PROPOSITION IV**

**PLAINTIFF CANNOT ESTABLISH A CLAIM
OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Finally, Plaintiff claims the alleged acts discussed above constitute intentional infliction of emotional distress ("IIED") under Oklahoma common law.  To state a claim for IIED, Plaintiff must show each of the following: "(1) that the tortfeasor acted intentionally or recklessly; (2) that the tortfeasor's conduct was extreme and outrageous; (3) that Plaintiff actually experienced emotional distress; and (4) that her emotional distress was severe."  *Daemi v. Church's Fried Chicken*, 931 F.2d 1379, 1387 (10th Cir. 1991); *see also Battle v. J-M Mfg. Co., Inc.*, No. 09-CV-106-TCK-FHM, 2011 WL 43066, *12 (N.D. Okla. Jan. 5, 2011).

To show the second element, Plaintiff must show that Cox's conduct was "so extreme and outrageous as to be beyond all possible boundaries of decency."  *Battle*, 2011 WL 43066, at *12 (citing *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986)).  Indeed, the alleged distress "must be of such character that 'no reasonable person could be expected to endure it.'"  *Zaren v. Diamond Broadcasting, Inc.*, 203 F.3d 714, 721 (10th Cir. 2000) (quoting *Daemi*, 93 F.2d at 1389).

"Workplace discrimination cases rarely present facts sufficient to constitute the type of extreme and outrageous behavior required to state a claim for IIED."  *Puckett v. Sprint Aerosystems, Inc.*, No. 12-CV-578-JED-PJC, 2013 WL 1944889, *2 (N.D. Okla. May 9, 2013).  Even Plaintiff's allegations of race discrimination, which Cox unequivocally denies, "do not

23

amount to extreme and outrageous conduct" as a matter of law.  *Id*. (holding that the plaintiff's allegations that "they were consistently subjected to unequal terms and conditions with regard to discipline and termination," including that one was routinely called 'stupid' and "harassed throughout her employment," and the other was subjected to disparaging comments about her," failed to state a claim for IIED).  Except for alleged remarks made by a co-worker *about* Odeh and his nationality, Palestinian Arab, Plaintiff never heard anyone at Cox make any racially derogatory remarks in the approximately 14 years she was employed there.  See Undisputed Material Fact No. 53.  Accordingly, Cox is entitled to summary judgment on Plaintiff's IIED claim.

## CONCLUSION

In cases such as these, the Court's "'role is to prevent intentional discriminatory ... practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments.'"  *DeWitt*, 845 F.3d at 1308 (*quoting Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)).  Plaintiff cannot show any evidence that she was discriminated against on the basis of her race.  Therefore, for the foregoing reasons, Cox requests that the Court grant its Motion for Summary Judgment on all of Plaintiff's claims and further requests that the Court provide such other and further relief that it determines is appropriate under the circumstances.

Respectfully submitted,

**NEWTON O'CONNOR TURNER & KETCHUM, P.C.**
**A Professional Corporation**

s/ William W. O'Connor
William W. O'Connor, OBA No. 13200
Jacob S. Crawford, OBA No. 31031
Keith A. Wilkes, OBA No. 16750
NEWTON, O'CONNOR, TURNER & KETCHUM, P.C.
2700 Bank of America Center
15 W. 6th Street
Tulsa, Oklahoma  74119
(918) 587-0101
(918) 587-0102 (facsimile)
boconnor@newtonoconnor.com
jcrawford@newtonoconnor.com
kwilkes@newtonoconnor.com

and

William D. Deveney, *pro hac vice*
ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
(404) 659-6700
(404) 222-9718
deveney@elarbeethompson.com

**ATTORNEYS FOR  DEFENDANT.**
**COXCOM, LLC, d/b/a COX**
**COMMUNICATIONS TULSA**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 13, 2017, I electronically filed the foregoing **BRIEF IN SUPPORT** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following counsel of record for Plaintiff:

Daniel E. Smolen
David Bross

<u>s/ William W. O'Connor</u>
**William W. O'Connor**

26